UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MT. HAWLEY INSURANCE COMPANY, <br> Plaintiff, <br> v. <br> BAY VALLEY SECURITY, LLC, et al., <br> Defendants. | Case No. 19-cv-04423-RS <br><br> **ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT** |

## I. INTRODUCTION

Plaintiff Mt. Hawley Insurance Company seeks summary judgment on its claims for declaratory judgment that it has no duty to defend or indemnify Bay Valley Security, LLC, its former employee Anthony Russell, or NESCTC Security Agency, LLC (an alleged "additional insured") in an underlying action brought against them in state court by Alina Guzman. Although Mt. Hawley has been defending Bay Valley and Russell under a reservation of rights, it contends misrepresentations made by Bay Valley when it applied for insurance render the policy void from its inception. Because the undisputed facts establish that the insurance applications contained material misrepresentations regarding the nature of Bay Valley's business and therefore the risk to be insured, Mt. Hawley is entitled to the declaratory relief it seeks and the motion will be granted.

## II. BACKGROUND

### A. The underlying action

Mt. Hawley presents the following facts, none of which are challenged by defendants. Defendant Bay Valley is a Northern California security company that had contracted with a national security agency, defendant NESCTC, to provide security services to local third-party clients. Pursuant to the NESCTC-Bay Valley contract, Bay Valley provided armed security services to a bowling alley in Alameda, AMF Southshore Lanes, under explicit "post orders" requiring that security guards wear a loaded pistol in a holster.

In May of 2017, Bay Valley's employee, Russell, was working at AMF, armed with a pistol, and Taser/stun gun, and carrying handcuffs. He got into an altercation with Guzman in the parking lot, with the result that she filed the underlying action against Bay Valley, Russell, NESCTC, and others, *Alina C. Guzman v. AMF Bowling Centers, Inc., et al.,* Alameda County Superior Court Case No. RG17885538. Bay Valley tendered defense of the underlying action to Mt. Hawley, which had issued Bay Valley a commercial general liability policy. Mt. Hawley agreed to defend Bay Valley and Russell under a reservation of rights. NESCTC, claiming to be an additional insured on the Policy, also tendered defense and indemnity of the underlying action to Mt. Hawley. By the time NESCTC was served, however, Mt. Hawley had learned of factual inaccuracies in the applications Bay Valley had submitted to obtain the policy. Mt. Hawley declined to defend NESCTC, contending the policy was void from its inception.

### B. The applications and the policy

Third-party defendants Elayna Coss and Sharp Insurance Agency were brokers working on behalf of Bay Valley for purposes of procuring liability insurance. In September 2016, Coss and Sharp, as Bay Valley's agents and on its behalf, submitted two applications to Mt. Hawley, through

their surplus lines broker, Scottish American Insurance Agency.[1] The applications were prepared and signed by Coss.[2]

The applications represented that Bay Valley was a one-man operation, with no employees and no payroll for security guards. The applications indicated Bay Valley's principal, George Odhiambo, provided unarmed security services, and did not do so at any large special events open to the public. One of the two forms stated that Bay Valley is a "SMALL SECURITY COMPANY" with annual gross sales of only "$70,000" and "NO ARMED GUARDS." The other form represented – in response to direct questions – that Bay Valley had "0" employees and spent "0" dollars in security guard payroll. Answering questions regarding the nature of the operations, the second form mirrored the first, indicating Bay Valley did not employ armed guards. The second form expressly asked whether Bay Valley provided security services for special events (which are open to the public) and to state the largest number of people attending such events. Bay Valley responded that the only special events for which it provides security services are "weddings," which are "private," with a maximum of "20" people attending, and that Bay Valley is not responsible for crowd control. Mt. Hawley offers the declaration of its underwriter, Jessica Dixon, who states that, based on the representations in the applications, Mt. Hawley considered the risk, determined the provisions, exclusions and conditions under which it was willing to insure Bay Valley, rated the risk, established the premium, and agreed to issue the policy.

It is undisputed, however, that the representations listed above were all false. At that time the applications were signed and submitted to Mt. Hawley, Bay Valley was a relatively large security company employing 57 security guards, including 8 armed guards, with an annual security guard

---

[1] Bay Valley points out that an earlier application had been submitted in May of that year, resulting in the issuance of a policy that was shortly thereafter cancelled for non-payment. The information provided in the May application was identical to that provided in September.

[2] Although not material to this motion, there appears to be no dispute that Coss forged the signature of Bay Valley's principal on the applications and on other correspondence, completely without the knowledge of Bay Valley. Why or how she did so is not explained in the record.

payroll of $850,000 to $890,000, and an annual revenue of $1.1 to $1.3 million. Additionally, Bay Valley had at least 4 contracts for armed security services in 2016, prior to the date the applications were submitted. Furthermore, every year since 2012, Bay Valley had been providing multiple armed security guards and crowd control services for the annual multi-day Greek Festival, which is open to the public and which Mt. Hawley views as a large high-risk "special event."

C. Subsequent events

Although Bay Valley challenges none of the foregoing facts, it contends that under principles of estoppel and/or waiver, Mt. Hawley cannot rely on the misrepresentations in the applications to avoid its obligations under the policy.[3] Bay Valley therefore points out the following chronology. Mt. Hawley had the original application in its possession in May of 2016, and it received the substantively identical applications in September of 2016, at which time it issued the policy in controversy. Bay Valley tendered defense of the underlying action to Mt. Hawley in July of 2018. Mt. Hawley accepted the defense, subject to a reservation of rights, the following month. Approximately one year later, in August of 2019, Mt. Hawley filed this action seeking declaratory relief that it has no duty to defend or indemnify, and a claim seeking to recover the defense costs it has incurred to date.[4]

In Bay Valley's view, Mt. Hawley therefore delayed approximately three years from the time it should have investigated supposed inconsistencies in the application before it filed this action seeking to "rescind" the policy. Bay Valley also contends Mt. Hawley's decision to investigate and eventually pursue recission "coincides" with Guzman having made a policy limits demand in the underlying action, in April of 2019.

---

[3] NESCTC also does not dispute any of the foregoing. It does not and could not advance waiver and estoppel arguments, however, as Mt. Hawley rejected its tender from the outset. NESCTC's opposition, therefore, relies solely on arguments that the misrepresentations were not material, or that there are at least triable issues of fact as to materiality—arguments that Bay Valley also makes.

[4] The current partial summary judgment motion is not directed at the reimbursement claim.

For its part, Mt. Hawley asserts it had no actual knowledge of the misrepresentations prior to June of 2019, when Marcos Cancio, an assistant vice president with "supervisory" responsibility for this matter, "reviewed the Applications and noticed a number of inconsistencies between the representations reflected in the Applications and the evidence developed in connection with the Underlying Action." Cancio then tasked one of his employees, Scott Lande, to contact Bay Valley's Odhiambo and inquire about the business operations as of the time of the applications. At the end of June of 2019, Odhiambo emailed Cancio that it was not accurate Bay Valley had "zero" employees and "zero" payroll as stated in the applications. As noted above, Mt. Hawley filed this action in August of 2019, just over one month later.[5]

Trial of the underlying action has been continued more than once, including as a result of the COVID-19 pandemic. It is currently set for August, 2021.

### III.  LEGAL STANDARD

Summary judgment is proper "if the pleadings and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings and admissions on file, together with the affidavits, if any which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323 (citations and internal quotation marks omitted). If it meets this burden, the moving party is then entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of the case with respect to which he bears the burden of proof at trial. *Id*. at 322-23.

---

[5]  Bay Valley notes that Mt. Hawley has also denied it a defense in a second action filed against it. The existence of that action does not affect the analysis of any of the issues in the present motion.

The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party cannot defeat the moving party's properly supported motion for summary judgment simply by alleging some factual dispute between the parties. To preclude the entry of summary judgment, the non-moving party must bring forth material facts, *i.e.*, "facts that might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 588 (1986).

The court must draw all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight to be accorded particular evidence. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496 (1991) (citing *Anderson*, 477 U.S. at 255); *Matsushita*, 475 U.S. at 588 (1986). It is the court's responsibility "to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec. Service v. Pacific Elec. Contractors*, 809 F.2d 626, 631 (9th Cir. 1987). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

## IV. DISCUSSION

### A. Materiality of the misrepresentations

The materiality of a misrepresentation is determined by its probable and reasonable effect upon the insurer. *See* Cal. Ins. Code, § 334. The misrepresentation need not relate to the loss ultimately claimed by the insured. *See Torbensen v. Family Life Ins. Co.*, 163 Cal.App.2d 401, 405 (1958). The test for materiality is whether the information would have caused the underwriter to reject the

application, charge a higher premium, or amend the policy terms, had the underwriter known the true facts. *See Old Line Life Ins. Co. v. Superior Court,* 229 Cal.App.3d 1600, 1604 (1991) ("'The most generally accepted test of materiality is whether or not the matter misstated could reasonably be considered material in affecting the insurer's decision as to whether or not to enter into the contract, in estimating the degree or character of the risk, or in fixing the premium rate thereon ' [Citations.]"). "This is a subjective test; the critical question is the effect truthful answers would have had on [the insurer], not on some 'average reasonable' insurer." *Imperial Cas. & Indem. Co. v. Sogomonian*, 198 Cal.App.3d 169, 181(1988).

Mt. Hawley first contends that under the applicable California law, answers to questions on insurance applications are deemed material to the insurer's decision to issue the policy, as a matter of law. *See California-Western States Life Ins. Co. v. Feinstein,* 15 Cal.2d 413, 423 (1940) ("[A]nswers to written questions set forth in application forms . . . [are] deemed material representations"]; *Thompson v. Occidental Life Insurance Co.*, 9 Cal.3d 904, 916 (1973)("The fact that the insurer has demanded answers to specific questions in an application for insurance is in itself usually sufficient to establish materiality as a matter of law."). As reflected by the qualifier "usually" in *Thompson,* however, it is not necessarily quite such a bright line as Mt. Hawley suggests. Rather, "[c]ourts are split on whether the insured's answers to questions in the insurance application must be regarded as material as a matter of law, or whether their materiality is a question of fact in each case." *Mitchell v. United Nat'l Ins. Co.*, 127 Cal. App. 4th 457, 474 (2005)(quoting Croskey, *et al.*, Cal. Practice Guide: Insurance Litigation (The Rutter Group 2004) ¶ 5:208, p. 5–40.1, and surveying cases).

Nevertheless, even to the degree that materiality is in the abstract a question of fact, here, as in *Mitchell,* there is no evidence on which a reasonable jury could base a conclusion that the misrepresentations were *not* material. The affirmative evidence of Mt. Hawley's subjective view—the relevant view—is Dixon's declaration that she would have considered the misrepresentations highly material and the policy either would not have issued or would have issued with a much higher premium had the truth been known. While defendants attack Dixon for being unable to point to specific underwriting guidelines she followed, and suggest that Mt. Hawley does in fact provide

policies even where certain of the risks are disclosed, that does not somehow undermine her testimony that the misrepresentations were material, or create a factual issue, given the nature of the misrepresentations in this case.

Furthermore, as the *Mitchell* court explained:

> [T]here might be instances when the question on the application is not relevant to an underwriting decision or the answer is such that the insurance company could not have relied upon it. Thus, we can conceive of situations when the issue of materiality might be a factual one. No such factual issues are presented here.
>
> The application questions in this case *plainly impact decisions on whether to insure and the premium to charge.*

127 Cal. App. 4th at 475 (emphasis added). So too here.[6]

B. Estoppel and waiver

Under the label of "estoppel," Bay Valley makes a number of arguments about the prejudice and unfairness it has already suffered and will suffer in the future as a result of Mt. Hawley's supposed "delay" in seeking recission.[7] To be sure, Bay Valley has identified harm that likely has arisen or will arise from having first been given a defense and then denied one—Mt. Hawley's contention that Bay Valley has no cause to complain because being provided a defense up till now was merely a "windfall" is not persuasive. Had the misrepresentations been addressed at the time of the applications, the policy either would not have issued, or would have issued with appropriate premiums and/or exclusions, but

---

[6] Defendants insist the misrepresentations regarding the number of employees cannot be material because Mt. Hawley only calculated an "estimated" premium based on the application and retained a right to conduct an audit and adjust the premium based on the actual number of employees in the policy period. The availability of an "audit" to account for fluctuations in employee numbers in the ordinary course of business does not render immaterial a flat-out misrepresentation that a 57-employee company has *no* employees at the time of the insurance application.

[7] Mt. Hawley insists it actually is *not* seeking to rescind the policy, and that instead the policy is already void *ab initio* as a result of the material misrepresentations. While the distinction Mt. Hawley seeks to draw may have some semantic merit, at least some equitable defenses would still be available to preclude a conclusion that the policy was in fact void *ab initio*. Accordingly, the distinction appears to be one without a difference.

would not be subject to cancellation now. Even if Mt. Hawley had not contended the policy was void until Bay Valley tendered defense of the underlying litigation, Bay Valley would have had options with respect to how to approach litigation and settlement that it no longer has, when the defense costs have been expended and it is facing a reimbursement claim from Mt. Hawley as well as the claim from Guzman.

Nevertheless, Bay Valley's arguments all turn on the unsupported assertion that Mt. Hawley in fact delayed in filing this action. There is no evidence whatsoever that Mt. Hawley had actual knowledge of the misrepresentations prior to July of 2019, just over a month before it initiated this suit. Except in connection with its waiver argument, discussed below, Bay Valley offers no authority that Mt. Hawley had a duty to investigate such that imputed knowledge would suffice. Accordingly, there is no basis to apply estoppel.

Bay Valley's closely related waiver argument is based on California Insurance Code section 336, which provides:

> The right to information of material facts may be waived, either (a) by the terms of insurance or (b) by neglect to make inquiries as to such facts, where they are distinctly implied in other facts of which information is communicated.

Bay Valley's theory is that there were "inconsistencies" in the applications that should have caused Mt. Hawley to make further inquiries. Specifically, Bay Valley contends the representations that it 1) had eight clients, 2) had been in business for 15 years, and 3) had a pre-employee screening process that included contacting personal references, confirming prior employment and obtaining employees' driving record, "cannot be squared" with the representation that it had no employees, and a payroll of $0. There is *no* obvious inconsistency between it being a one-man operation and having eight clients and a 15-year history.

The reference to screening potential employees, while slightly more notable, falls far short of a red flag and does not "distinctly imply" the representation that the business currently had no employees was false. Mt. Hawley was entitled to assume that Bay Valley was truthfully stating it had no employees at the time of the application for insurance, but that if and when it hired employees it

would follow certain screening procedures. Indeed, if Bay Valley did take on some employees during the policy term, that would be exactly the kind of circumstance the "audit" was designed to address. Nothing in the "information communicated" about the existence of screening policies put Mt. Hawley on inquiry notice under section 336 that Bay Valley actually already employed nearly 60 security guards. Accordingly, no reasonable jury could conclude that Mt. Hawley waived its right to the truthful answers Bay Valley was obligated to provide to the specific questions on the applications.

C.  Other issues

Bay Valley suggests that because recission is an equitable remedy, even if Mt. Hawley has established a theoretical right to recission of the policy, in these circumstances the recission should be conditioned on Mt. Hawley defending and indemnifying Bay Valley in this particular underlying action. There is no basis for such relief.

Similarly, although Bay Valley acknowledges the law clearly makes it responsible for the misrepresentations of Coss and Sharp on its behalf, it requests relief from that rule given the egregiousness of Coss and Sharp's misconduct. In addition to there being no legal support for such a result, it would merely shift the injury caused by the agents (Coss and Sharp) from their principal (Bay Valley) to an innocent third party (Mt. Hawley), which equity does not allow. *See Reusche v. California Pac. Title Ins. Co.*, 231 Cal. App. 2d 731, 736–37 (1965) ("[W]here one of two innocent parties must suffer, the loss should be accepted by the principal who is responsible for the selection of the agent and for the definition of his authority.").

Finally, Bay Valley suggests the motion be denied, or continued pending a deposition of Cancio, whom it asserts was never properly disclosed. Even assuming Mt. Hawley breached a disclosure obligation as to Cancio, Bay Valley has not shown a continuance for his deposition is warranted. Nothing in the analysis turns on evidence for which Cancio is the sole source, or which a deposition can reasonably be assumed might call into question. There is no merit to Bay Valley's complaint that Cancio's declaration contradicts a prior interrogatory response that Lande was the one who discovered the misrepresentations. Cancio declares he started the inquiry and tasked Lande with

contacting Bay Valley. The email admitting the application was inaccurate was sent to Lande. There is no inconsistency between Cancio's declaration and the interrogatory response.

## V.  CONCLUSION

The motion for partial summary judgment is granted.

**IT IS SO ORDERED**.

Dated: May 19, 2021

_____
RICHARD SEEBORG
Chief United States District Judge